IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DELECTABLE BRANDS, LLC,       )
                              )
           Plaintiff,         )
                              )
v.                            )        Case No. 2:15-cv-01511-TMP
                              )
YOGURTLAB USA, LLC, *et al.*, )
                              )
           Defendants.        )

## MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion to Dismiss Counts III, IV, and V of the

Amended Complaint, filed by Defendants YogurtLab USA, LLC, Yogurt Lab

Franchising, LLC, Yogurt Lab Holdings, LLC, Yogurt Lab II, LLC, and Yogurt

Lab, LLC (together "defendants"). (Doc. 35). The motion has been fully briefed,

and the parties have consented to dispositive jurisdiction by a magistrate judge.

## I. PROCEDURAL HISTORY

The above-styled case was removed to this court from the Circuit Court of

Jefferson County, Alabama, on September 1, 2015. (Doc. 1). The original

Complaint named as defendants YogurtLab USA, LLC, and Aaron Switz

("original defendants"). The original defendants filed a Motion to Dismiss the

Complaint, which was granted as to defendant Aaron Switz, but denied as to defendant YogurtLab USA, LLC. Following a Joint Motion to Amend the Scheduling Order, which the court granted, the plaintiff filed an Amended Complaint on January 15, 2017. (Doc. 25). In the Amended Complaint, the plaintiff named four additional defendants: Yogurt Lab Franchising, LLC, Yogurt Lab Holdings, LLC, Yogurt Lab II, LLC, and Yogurt Lab, LLC (the "new defendants"). The Amended Complaint incorporated by reference Counts I and II of the Original Complaint, and asserted new Counts III through V. All counts are pleaded against all defendants.

The defendants filed the instant Motion to Dismiss on February 13, 2017. (Doc. 35). After receiving an extension from the court, the plaintiff filed its response to the motion on March 8, 2017. (Doc. 47). The defendants' filed a reply to the plaintiff's response on March 15, 2017. (Doc. 51).

## II. FACTS

The facts, as pleaded in the Amended Complaint by the non-moving plaintiff, are as follows:

The plaintiff is an Alabama limited liability company with its primary place of business in Jefferson County, Alabama. It is a food service business that operates retail yogurt stores in the state of Alabama. Defendant YogurtLab USA,

LLC, is a Minnesota corporation headquartered in Minneapolis, Minnesota, and doing business in the state of Alabama. Prior to April 2, 2013, YogurtLab USA, LLC, began using the trade name "YogurtLab" in Minnesota. The trade name, however, was registered to the plaintiff at the time. The plaintiff, therefore, sent a "cease and desist" letter to YogurtLab USA, LLC, demanding that it stop using the trade name "YogurtLab."

After negotiation, the plaintiff and YogurtLab USA, LLC, then entered into a Purchase Agreement through which YogurtLab USA agreed to purchase certain trademarks and other intellectual property from the plaintiff. The transaction occurred on April 2, 2013. As part of the Purchase Agreement, the plaintiff retained a license to use the intellectual property made the subject of the Purchase Agreement, including the tradename "YogurtLab," at its existing Alabama locations. The terms of the Purchase Agreement required YogurtLab USA, LLC, as the purchaser, to make periodic payments to the plaintiff, subject to minimum payments of $25,000.00 on the second, third, fourth, and fifth anniversary dates of the April 2, 2013, closing date. YogurtLab USA, LLC, failed to make the first payment on April 2, 2015, and remains in default on that payment.[1] The plaintiff notified YogurtLab USA, LLC of its default under the terms of the Purchase Agreement as early as April 8, 2015. On July 1, 2015, the plaintiff's attorney

---

[1] Presumably, YogurtLab USA, LLC also is in arrears as to the payments due on April 2, 2016, and April 2, 2017, which were the third and fourth anniversary dates.

notified YogurtLab USA, LLC, via electronic mail and regular mail of its breach of the Purchase Agreement.

The new defendants are all Minnesota corporations with principal places of business Minnesota. The new defendants also have been using the tradename "YogurtLab" made the subject of the Purchase Agreement entered into between the plaintiff and YogurtLab USA, LLC, on April 2, 2013, under a license from YogurtLab USA, LLC. All of the new defendants and YogurtLab USA, LLC, are commonly owned, at least partially, by Aaron Switz, who is listed as the "manager" of all of the defendants with the Minnesota Secretary of State. They all share the same address. None of the new defendants has made payments to the plaintiff under the Purchase Agreement, or as a royalty for the use of the tradename, which they all continue to use.

## III. DISCUSSION

### A. *Shotgun Pleading*

The defendants argued in their motion to dismiss that the Amended Complaint is an impermissible shotgun pleading. The Eleventh Circuit sets out in Weiland v. Palm Beach County Sheriff's Office, that there are approximately four types of "shotgun pleadings."

The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests.

792 F.3d 1313, 1323 (11th Cir. 2015). The plaintiff's Amended Complaint incorporates by reference the original Complaint and states, as if by rote under each count, that it "affirms and incorporates by reference the allegations set forth" in preceding paragraphs. Although this type of incorporation by reference is procedurally frowned-upon, each Count in the Amended Complaint also sets out the basis for that particular count. The Amended Complaint does not create confusion about the nature of the claims asserted against each defendant, namely breach of the Purchase Agreement and, alternatively, violation of the Lanham Act for using the tradename "YogurtLab."

Defendants also argue that it was improper for the plaintiff to bring each count generally against all defendants. It is not inappropriate, however, to assert a claim against multiple defendants. In the Amended Complaint, the plaintiff asserts that Counts I and II are set out against the new defendants as well as YogurtLab USA, LLC. (Doc. 25, ¶ 17). Also, beneath the headings of Count III through V, the plaintiff notes that each counts relate to "(All Defendants)." (Doc. 25, pp. 6-8). The problem with shotgun pleadings is that they fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland, 729 F.3d at 1323. That is not the case here. While it may be that the facts pleaded fail to establish particular types of claims, there is no confusion that plaintiff alleges that each defendant has breached the Purchase agreement and has wrongfully used the tradename "YogurtLab" in violation of plaintiff's rights in the name. Therefore, on the argument that the Amended Complaint is an inadmissible shotgun pleading, the Motion to Dismiss the Amended Complaint is due to be denied.

### B. Personal Jurisdiction

The new defendants contend that this court lacks personal jurisdiction over them. The new defendants argue that *specific* personal jurisdiction is the only basis by which the plaintiff can argue that personal jurisdiction exists over them and because the court has determined no personal jurisdiction exists over Aaron

Switz, the new defendants also do not meet the criteria for establishing minimum contacts and specific personal jurisdiction. The plaintiff counters, however, that because the new defendants are assignees to the Purchase Agreement entered in to between the plaintiff and YogurtLab USA, LLC, the new defendants stand in equal place with the original defendant, owing the same duties to the plaintiff under the Purchase Agreement. Therefore, argues the plaintiff, the new defendants have the same minimum contacts as the original defendant. The plaintiff also argues that minimum contacts are established because the defendants' wrongful acts were intentional and, therefore, the defendants were aware that the harm caused by those actions would be felt by a specific entity in the state of Alabama.

As to establishing minimum contacts for specific personal jurisdiction, the Eleventh Circuit Court of Appeals has explained:

> We undertake a two-step inquiry to determine whether the exercise of personal jurisdiction over a nonresident defendant is proper. First, we determine whether the state's long-arm statute provides jurisdiction. Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1295 (11th Cir. 2009). Only where the long-arm statute provides jurisdiction do we proceed to the second step and determine whether "the defendant ha[s] minimum contacts with the forum state" and, if it does, whether the district court's exercise of jurisdiction over that defendant would "offend traditional notions of fair play and substantial justice." Id. at 1295-96 (citations omitted) (alteration in original).

PVC Windoors, Inc., v. Babbitbay Beach Constr., 598 F.3d 802, 807 (11th Cir. 2010). In Alabama, "the two inquiries merge, because Alabama's long-arm statue

permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible." Sloss Industries Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2007), citing Ala. R. Civ. P. 4.2(b); Sieber v. Campbell, 801 So. 2d 641, 644 (Ala. 2001).

Personal jurisdiction exists in two forms: general personal jurisdiction and specific personal jurisdiction, and there are three criteria necessary for minimum contacts to establish *specific* personal jurisdiction.

> To constitute minimum contacts for purposes of specific jurisdiction, the defendant's contacts with the applicable forum must satisfy three criteria. First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum ..., thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that [the defendant] should reasonably anticipate being haled into court there. Vermeulen, 985 F.2d at 1546 (citations and quotation marks omitted).

United States Securities and Exchange Commission v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997); see Francosteel Corporation, Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange, 19 F.3d 624 (11th Cir. 1994).

The court already has determined that specific personal jurisdiction exists as to the original defendant, YogurtLab USA, LLC. YogurtLab negotiated with an Alabama corporation over purchase of a tradename and other intellectual property,

and it entered into a contract to purchase certain intellectual assets of the Alabama corporation. The plaintiff argues in the Amended Complaint that "[i]n order to use the trademark and trade names in question [the new defendants] would have taken an assignment or other transfer of rights from YogurtLab USA, LLC, to such Defendants. The Purchase Agreement provides YogurtLab USA, LLC, with the 'sole and absolute right' to transfer and/or assign trademarks. As assignees of such rights, [the new defendants] are required to be bound by the applicable terms and conditions of the Purchase Agreement." (Doc. 25, ¶ 16). Thus, plaintiff's theory of specific personal jurisdiction of the newly added defendants is that they are the assignees of the original defendant and, therefore, subject to the same jurisdiction as the original defendant.

The Alabama Supreme Court has discussed assignees as follows:

As an assignee, Green Tree simply steps into the shoes of the assignor, Johnson Mobile Homes, a signatory to the installment agreement, which contained the arbitration clause. See *Nissan Motor Acceptance Corp. v. Ross,* 703 So.2d 324, 326 (Ala.1997) (citing *Upchurch v. West,* 234 Ala. 604, 609, 176 So. 186, 190 (1937), overruled on other grounds, *Dominex, Inc. v. Key,* 456 So.2d 1047 (Ala.1984)). "A valid assignment gives the assignee the same rights, benefits, and remedies that the assignor possesses." 703 So. 2d at 326. Therefore, as a result of the assignment of the installment agreement to Green Tree, it holds the same rights, benefits, and remedies that Johnson Mobile Homes held under the *installment agreement.*

<u>Green Tree Fin. Corp. v. Channell</u>, 825 So. 2d 90, 95 (Ala. 2002).

The new defendants argue that <u>Green Tree</u>, along with the other cases cited by the plaintiff, are inapplicable to the determination of personal jurisdiction, as the cases address the applicability of certain contract provisions to assignees rather than jurisdiction.  Although the new defendants have not provided any authority explaining why this general provision of contract law cannot be applied to the determination of personal jurisdiction, the court agrees that the analysis of personal jurisdiction is distinct from this contract analysis.

In the instant case, the new defendants have received an assignment of rights to trademarks and trade names purchased from an Alabama company, but it is not true that they "stand in the shoes" of YogurtLab USA, LLC.  What the new defendants obtained was a license from YogurtLab USA to use the tradename "YogurtLab."  They are mere purchasers of a right, the same as any purchaser of a good or asset.  Merely by purchasing the right to use a tradename, they did not take on all the obligations, duties, and liabilities shouldered by YogurtLab USA.  YogurtLab USA did not surrender its purported ownership of the tradename rights and it was not supplanted as a party of the Purchase Agreement.  YogurtLab continues to be subject to the rights and duties contained in the Purchase Agreement.

Even if the new defendants were true "assignees" of the rights and obligations of the Purchase Agreement, that alone does not demonstrate that they have sufficient minimum contacts with Alabama for specific personal jurisdiction. An assignee to a contract does not subject itself to personal jurisdiction in a forum merely because the assignor would be subject to such jurisdiction. A case from the United States District Court for the District of Columbia is instructive. In <u>Brit UW, Ltd. v. Manhattan Beachwear, LLC</u>, 235 F. Supp. 3d 48 (D.D.C. 2017), an insurer filed a declaratory judgment action the District of Columbia against the assignee of an insured seeking a declaration that it owned nothing to either the original insured or the assignee. "Brit [insurer] hangs its hat on the argument that MBW [assignee of insured] accepted D.C. personal jurisdiction by taking assignment of the Hettrick estate's claims against Brit under the professional liability policy, which it argues was a 'D.C. contract.'" Brit UW, Ltd. v. Manhattan Beachwear, LLC, 235 F. Supp. 3d 48, at *4 (D.D.C. 2017). The court explained:

> Contrary to Brit's apparent position, the analysis of the defendant's contacts with the forum state is required when the defendant is the assignee of a contract. Brit appears to argue that if the initial contract was sufficiently connected to D.C., then any assignee would automatically step into the shoes of the assignor and "submit[ ] to a D.C. court's jurisdiction under the D.C. long-arm statute." [Citation to record omitted]. The Court finds that this standard is not supported by the law of this circuit or in harmony with the teachings of <u>Burger</u>

King [Corp. v. Rudzewicz, 471 U.S. 462, 474–75, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)].

\* \* \*

[T]his Court concludes that the applicable test for exercising personal jurisdiction over a non-resident assignee, when the assignee's purported connection to the forum state stems from the assignment, is whether the assignee's contacts with the forum state are sufficient to satisfy the minimum contacts requirement of the due process clause. In other words, the assignee must "purposefully establish [ ] minimum contacts with the forum," as determined through a "highly realistic" analysis that considers the assignee's "prior negotiations and contemplated future consequences, along with the terms of the [assignment] and the parties' actual course of dealing." Burger King, 471 U.S. at 479, 105 S. Ct. 2174. If the assignee has taken an interest in real property in the district, or if the assignment was executed in the district, or if the assignee receives an income stream from the district, or other similar connections to the forum are present, then exercising personal jurisdiction over the assignee may be appropriate.

Brit UW, Ltd. v. Manhattan Beachwear, LLC, 235 F. Supp. 3d 48, at \*6 (D.D.C. 2017). See also Rogers v. 5-Star Management, Inc., 946 F. Supp. 907, 913 (D.N.M. 1996) (holding court lacked personal jurisdiction based wholly on theory that assignee "stood in the shoes" of the assignor of a promissory note); Barry v. Mortgage Servicing Acquisition Corp., 909 F. Supp. 65, 74 (D.R.I. 1995) (status as assignee of a party over whom court had jurisdiction is not enough to create specific or general personal jurisdiction over the assignee); Conwed Corp. v. Nortene, S.A., 404 F.Supp. 497, 501–02 (D.Minn.1975) (holding that court did not have personal jurisdiction over nonresident defendant where defendant assignee

received patents from assignor over whom court had personal jurisdiction, in part because "the unilateral activity of those who claim some relationship with a nonresident defendant, cannot satisfy the requirement of contact with the forum State").

This conclusion is consistent with several tenets of personal-jurisdiction analysis. First, the amenability to jurisdiction in a particular forum must be assessed individually for each defendant. See Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 1487, 79 L. Ed. 2d 804 (1984). Also, the analysis of personal jurisdiction is not a "mechanical test," but rather a "highly realistic" assessment of the circumstances surrounding a defendant's contacts with a forum. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). Third, the unilateral activities of third-parties with a non-resident defendant cannot create personal jurisdiction; the defendant in question must purposefully avail itself of the benefits of the forum. The fact that YogurtLab USA, over whom the court has specific personal jurisdiction, assigned a contract right or intellectual property right to other entities does not subject those other entities to jurisdiction in Alabama. The contacts of each entity with Alabama must be weighed.

Other than alleging that the new defendants have received assignment of the right to use the tradename "YogurtLab" from YogurtLab USA, the Amended

Complaint alleges no facts indicating that the new defendants have any contacts with Alabama, much less sufficient minimum contacts to comply with due process. There are no factual allegations that any of the new defendants currently do business in Alabama or had any contact with the plaintiff in Alabama. Plaintiff rests its entire argument for personal jurisdiction over these defendants on the theory that they are the assignees of YogurtLab USA and therefore are subject to jurisdiction just as YogurtLab USA is. That contention fails to carry the day.

The fact that the assignee entities in this case are very closely related does not change the outcome. The plaintiff attached in its response to the Motion to Dismiss the business record details for each defendant from the Minnesota Secretary of State website.[2] All of the defendants (new and old) list Aaron Switz as their manager. (Doc. 47-1). The principal office address for all of the new defendants is listed as 5007 France Avenue South, Suite 2, Minneapolis, Minnesota. Yogurt Lab USA has a different executive office, but also lists its manager as Aaron Switz and lists its Registered Office Address as 5007 France Avenue South.[3] But these factors establish only that the defendants are subsidiary

---

[2]   Unlike motions to dismiss under Rule 12(b)(6) or motions for judgment on the pleadings under Rule 12(c), Fed.R.Civ.P, which require the court to convert such motions to motions for summary judgment under Rule 56 if matter outside the pleadings is considered, the court may consider and weigh evidence on the question of personal jurisdiction, and make findings of fact regarding jurisdiction.

[3] It is worth noting, also, that YogurtLab USA, LLC, no longer appears on the Minnesota Secretary of State website as an active business; only the new defendants remain.

or sibling entities to one another; it does not establish that they share the same minimum contacts with Alabama.

Merely receiving assignment of rights to use a tradename, even from a very closely-related entity, does not alone create personal jurisdiction in a foreign forum. The minimum contacts of each defendant must be considered, and in this case, there is no allegation or evidence that the new defendants had any contacts with the State of Alabama.

Despite this conclusion that the newly added defendants have a meritorious objection to the court's exercise of personal jurisdiction over them, the plaintiff also argues that the new defendants waived their objection to personal jurisdiction because their motion to dismiss challenged only three of the five counts of the Amended Complaint alleged against them. The motion and brief filed by the new defendants unequivocally seeks dismissal only of Counts III, IV, and V; it raises no challenge at all to Counts I and II. (See Docs. 35, 37). The question presented, therefore, is whether such a partial motion to dismiss amounts to a waiver of personal jurisdiction or only a limited waiver as to those counts not challenged.

The court finds that a defendant cannot partially assert lack of personal jurisdiction as a defense because doing so creates piecemeal litigation and exposes the plaintiff to splitting his claim between two forums from which he might receive inconsistent results. Where the plaintiff is asserting multiple legal theories to

redress a single claim or cause of action,[4] the defendant may not plead the lack of personal jurisdiction as to some legal theories but not as to others; the defendant must plead the defense of lack of personal jurisdiction as to the entire claim or cause of action or risk waiving the defense entirely.

This is not a case in which there are separate and distinct causes of action or "claims" for which there may be different jurisdictional facts. In the instant case, there is only one wrong or "cause of action"---the allegedly unlawful use of the "YogurtLab" tradename—on which several theories of recovery have been pleaded. The new defendants clearly raise the lack of personal jurisdiction over them as to three counts of the Amended Complaint, but clearly failed to do so as to Counts I and II. On this face, the posture of this motion means that the new defendants challenge the court's personal jurisdiction as to Counts III, IV, and V, but they have waived the defense as to Counts I and II. Lane v. XYZ Venture Partners, L.L.C., 322 F. App'x 675, 678 (11th Cir. 2009) ("[I]t is true that the defense of lack of personal jurisdiction can be waived by filing a motion which does not raise the defense, Fed.R.Civ.P. 12(h)(1)…."); Perrigo Co. v. Merial Ltd., 215 F. Supp. 3d 1329, 1335 (N.D. Ga. 2016). While defendant may elect to

---

[4] Of course, the plaintiff's "cause of action" or "claim" refers to the wrong sought to be remedied, not the separate legal theories that may be pleaded to remedy the wrong. See Vanover v. NCO Fin. Servs., Inc., 857 F.3d 833, 841 (11th Cir. 2017). In any case, a plaintiff may plead multiple theories of recovery to redress a single claim or cause of action. A claim may not be "split" between two or more lawsuits in different forums. Id.

challenge personal jurisdiction as to a "claim" or "cause of action" a plaintiff seeks to remedy by suit, the defendant cannot split the cause of action by attempting to assert lack of personal jurisdiction as to some theories of recovery, but not as to others.  Allowing a defendant to do so compels the plaintiff to pursue his single claim in two different forums, litigating some theories of recovery in one and the remaining theories of recovery in the other, and, moreover, running the risk that some theories will never be litigated because they become barred by claim preclusion.[5]  The defendant must decide whether to assert lack of personal jurisdiction over the plaintiff's *entire* claim, not just as to some of the theories of law used to remedy the claim.

Having concluded that the new defendants cannot split the plaintiff's cause of action by pleading lack of personal jurisdiction only as to some theories of law, the question is whether such an attempt must be treated as challenging lack of personal jurisdiction as to the entire claim (and all theories of recovery) or whether it is treated as a waiver of the defense.  The court believes the proper course is to treat it as a waiver of lack of personal jurisdiction.  The new defendants had the right to raise lack of personal jurisdiction as to plaintiff's entire claim, but chose

---

[5] Whichever court reaches judgment first will have a claim preclusive effect on all other attempts by the plaintiff to remedy that same claim or cause of action.  If the plaintiff is forced to split his claim between two forums, pursuing some theories in one and other theories in the other, he will find no single forum in which he can litigate all of his theories of recovery.  Thus, the theories of recovery pending in the court that does not reach judgment first will become claim precluded by *res judicata*.

not to do so. They clearly elected to litigate Counts I and II of the Amended Complaint in *this* court. By doing so they voluntarily subjected themselves to the jurisdiction of this court, and that necessarily means as to the entire claim pleaded by the plaintiff regardless of the different legal theories of recovery the plaintiff alleges. Therefore, even though the court previously concluded that the new defendants lack sufficient contacts with this forum to subject them to personal jurisdiction, they waived that defense. To the extent they argue that ground as a basis for dismissal, it is DENIED.

### C. Standing for Lanham Act Claim

The defendants argue that the plaintiff lacks standing to bring a claim under the Lanham Act because the plaintiff has sold and conveyed away its ownership of the tradename in dispute. The plaintiff alleges in the Complaint and Amended Complaint that it entered into a Purchase Agreement, selling the intellectual property at issue to YogurtLab USA, LLC. The defendants argue that, because of this Purchase Agreement, the plaintiff no longer has ownership of a valid trademark, which is required to have standing to bring a claim under the Lanham Act. The plaintiff argues, however, that its Lanham Act claim is pleaded in the alternative of its breach of contract claim. The Eleventh Circuit Court of Appeals has made clear that the pleading of alternative and inconsistent claims is permitted. Karen Savage v. Secure First Credit Union, 2016 WL 2997171 (May 25, 2016);

citing United Techs. Corp. v. Mazer, 556 F.3d 1260, 1273 (11th Cir. 2009).  At the

pleading stage of a case, Rule 8(d)(3) of the Federal Rules of Civil Procedure

plainly provides that a "party may state as many separate claims or defenses as it

has, *regardless of consistency*."  (Emphasis added).

The plaintiff has sued, alternatively, for breach of the Purchase Agreement

and for violation of its tradename rights under the Lanham Act.  Plaintiff's remedy

may be either a judgment for breach of the contract or, if the Purchase Agreement

is set aside, restoration of its rights in the "YogurtLab" tradename under the

Lanham Act.[6]  Thus, simply because the plaintiff's breach of contract claim and

Lanham Act claim ultimately may be inconsistent with one another, this does not

mean that the plaintiff must choose between them at the pleading stage of the case.

The plaintiff may plead them alternatively and then determine through discovery

which is better supported by the evidence and consistent with the underlying facts.

At this stage, therefore, the defendants are not entitled to the dismissal of the

Lanham Act claims based on inconsistency of pleadings.  Accordingly, the motion

to dismiss on this premise is due to be denied.

---

[6]    Without prejudging the merits of these claims, the court acknowledges that the breach of
contract claim is probably the most appropriate avenue for a remedy.  It appears to be undisputed
that the plaintiff entered into the Purchase Agreement to sell its ownership of the "YogurtLab"
tradename, and once that conveyance occurred, it no longer held any rights in the name.  It is
likely that, only if the Purchase Agreement was void from the beginning, plaintiff has or retained
any ownership interest in the tradename which can be asserted now.  It is not necessary to reach
that issue this early in the case, however, as it is fact-dependent.

### D. Failure to State a Claim

Before the Supreme Court decided <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), a court could dismiss a complaint for failure to state a claim only where it was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, as set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The well-established Rule 12(b)(6) standard set forth in <u>Conley</u> was expressly rejected in <u>Twombly</u> when the Supreme Court examined the sufficiency of a plaintiff's complaint and determined:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requests more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

550 U.S. at 555 (citations omitted). The court went on to criticize <u>Conley</u>, stating that "[t]he 'no set of facts' language has been questioned, criticized, and explained away long enough" by courts and commentators, and "is best forgotten as an

incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 562-63. The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. The Supreme Court expanded on the Twombly standard when it decided Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009), reiterating the Twombly determination that a claim is insufficiently pleaded if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Iqbal, 129 S. Ct. at 1949. The Court further explained:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."

Iqbal, 129 S. Ct. at 1949-50 (citation omitted).  See also Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252 (11th Cir. 2009) ("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss" and "the well-pled allegations must nudge the claim 'across the line from conceivable to plausible'" (quoting Iqbal and Twombly)).

### 1. **Lanham Act**

The plaintiff asserts claims under two sections of the Lanham Act: Section 32, which prohibits the use of a registered mark or the reproduction or imitation of a registered mark without the registrant's consent (15 U.S.C. § 1114); and Section 43, which prohibits deceptive trade practices likely to cause confusion in the public (15 U.S.C. § 1125).  The defendants assert that these claims have not been properly pleaded under the Twombly and Iqbal pleading standards.  The defendants argue that the plaintiff has failed to state a claim because the plaintiffs acknowledge that the defendants purchased the intellectual property at issue in the Purchase Agreement.  Therefore, the defendants argue, as owners of the intellectual property at issue, they cannot use it in such a way that violates the Lanham Act.

As the court found above, it is appropriate, at the pleading stage, to plead in the alternative. The plaintiff argues that the Purchase Agreement may be void or unenforceable. At the pleading stage, without discovery, it is premature to determine whether the contract is valid. Accordingly, it is inappropriate to dismiss the plaintiff's Lanham Act claims for failure to state a claim under Rule 12(b)(6).

## 2. **Conspiracy**

The defendants also argue that the plaintiff failed to plead an actionable claim of conspiracy. In the Amended Complaint, the plaintiff alleges that "[a]ll Defendants, due to the common ownership of Aaron Switz and the fact that Aaron Switz is the manager and agent of all of the Defendants, knew of the obligations set forth in the Purchase Agreement, including monies due and payable to Delectable Brands." (Doc. 25, ¶ 27). It is on this basis that the plaintiff alleges that the defendants conspired together to damage the plaintiff by not paying the fees due under the Purchase Agreement.

Under Alabama law, a plaintiff must establish the following elements to support a claim of civil conspiracy: "(1) concerted action by two or more persons to (2) achieve an unlawful purpose or a lawful purpose by unlawful means." J & M Assoc., Inc. v. Romero, 488 Fed. Appx. 373, 375 (11th Cir. 2012), citing Luck v. Primus Auto. Fin. Servs., Inc., 763 So.2d 243, 247 (Ala. 2000). The conspiracy claim hinges on the fact that each of the corporate defendants was managed and/or

owned by the same individual and, therefore, had the same knowledge. The entirety of the plaintiff's conspiracy claim states:

26. Plaintiff Delectable Brands affirms and incorporates by reference the allegations set forth in the preceding paragraphs as if set forth fully herein.

27. All Defendants, due to the common ownership of Aaron Switz and the fact that Aaron Switz is the manager and agent of all of the Defendants, knew of the obligations set forth in the Purchase Agreement, including monies due and payable to Delectable Brands.

28. The Defendants conspired together to accomplish the acts as set forth in the Complaint and Amended Complaint and cause damage to the Plaintiff.

29. All Defendants participated in the conspiracy set forth herein and all are responsible for the Plaintiff's Damages.

(Doc. 25, ¶¶ 26-29).

The facts in the plaintiff's conspiracy claim allege that the defendants: failed to make payments described in the Purchase Agreement both under the original agreement and under licenses and franchises to third parties; wrongfully use the trademarks and trade names addressed in the Purchase Agreement; and are under the common ownership and management of Aaron Switz. (Doc. 25, pp. 2-4). Those facts are insufficient to support the elements of conspiracy under the Twombly and Iqbal pleading standards. The plaintiff must allege facts from which

it can be inferred plausibly that a conspiratorial agreement, a "meeting of the minds," occurred among the various separate corporate defendants. The allegation that Switz founded and manages all of them by itself does not show that plausible conspiratorial agreement. The allegations of conspiracy amount to nothing more than "labels and conclusions" and, therefore, cannot withstand a motion dismiss. See <u>Iqbal</u>, 129 S. Ct. at 1949. Because the plaintiff has not set forth facts to make a conspiracy claim plausible as required by <u>Twombly</u> and <u>Iqbal</u>, the Motion to Dismiss the Amended Complaint, as it pertains to the plaintiff's conspiracy claim, is due to be granted.

### 3. **Permanent Injunctive Relief**

The defendants contend that the plaintiff's claim for injunctive relief should be dismissed because it is based on the plaintiff's Lanham Act claims. The defendants argue that, because the plaintiff cannot support a Lanham Act claim, the plaintiff cannot move for injunctive relief based on alleged violations of the Lanham Act. As decided herein, the plaintiff, at least at the pleading stage, may properly bring a Lanham Act claim in the alternative of the breach of contract claim. Therefore, the plaintiff's claim for injunctive relief also survives the Motion to Dismiss the Amended Complaint.

## IV. CONCLUSION

For the reasons set forth herein, the defendants' Motion to Dismiss the Amended Complaint (doc. 37) is due to be GRANTED IN PART and DENIED IN PART. The motion is DENIED as to the defense of lack of personal jurisdiction, as that defense was waived by the newly added defendants. The motion is GRANTED as to the plaintiff's Count V for Conspiracy, and Count V is DISMISSED WITH PREJUDICE. The motion is DENIED as to the plaintiff's Counts I through IV.

All defendants shall answer the Amended Complaint within fourteen (14) days from this date.

DONE this 25th day of August, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE